

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-25-2007

# Kanter v. Barella

Precedential or Non-Precedential: Precedential

Docket No. 05-5398

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Kanter v. Barella" (2007). *2007 Decisions.* Paper 1022.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1022

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 05-5398

_____

RHODA KANTER, on behalf of herself and
derivatively on behalf of MEDQUIST

v.

HANS M. BARELLA;
BELINDA W. CHEW; WILLIAM E. CURRAN;
STEPHEN H. RUSCKOWSKI;
A. FRED RUTTENBERG, ESQ. ;
RICHARD H. STOWE; JOHN H. UNDERWOOD;
SCOTT M. WEISENHOFF; ERIK J. WESTERINK;
JAN H.M. HOMMEN;
KONINKLIJKE PHILIPS ELECTRONICS N.V.;
MEDQUIST INC. a New Jersey Corporation

Rhoda Kanter,
                                    Appellant

On Appeal from the United States District Court
for the District of New Jersey
D.C. Civil Action No. 04-cv-05542
(Honorable Jerome B. Simandle)


Argued March 1, 2007

Before:  SCIRICA, *Chief Judge*,
McKEE and NOONAN[*], *Circuit Judges*.

(Filed: May 25, 2007)

DEBORAH R. GROSS, ESQUIRE (ARGUED)
TINA MOUKOULIS, ESQUIRE
Law Offices of Bernard M. Gross
The Wanamaker Building
100 Penn Square East, Suite 450
Philadelphia, Pennsylvania 19107
        Attorneys for Appellant

---

[*]The Honorable John T. Noonan, Jr., United States Circuit
Judge for the Ninth Judicial Circuit, sitting by designation.

BRIAN T. FRAWLEY, ESQUIRE (ARGUED)
Sullivan & Cromwell
125 Broad Street
New York, New York 10004

MICHAEL R. GRIFFINGER, ESQUIRE
LAN HOANG, ESQUIRE
TIMOTHY S. SUSANIN, ESQUIRE
Gibbons, P.C.
One Gateway Center
Newark, New Jersey 07102-5310
  Attorneys for Appellees,
  Hans M. Barella, Belinda W. Chew
  William E. Curran, Stephen H. Rusckowski
  Scott M. Weisenhoff, Erik J. Westerink
  Jan H.M. Hommen, Koninklijke Philips Electronics N.V.

RANDALL W. BODNER, ESQUIRE (ARGUED)
Ropes & Gray
One International Place
Boston, Massachusetts 02110-2624

JEFFREY W. LORELL, ESQUIRE
Saiber, Schlesinger, Satz & Goldstein
One Gateway Center, Suite 1300
Newark, New Jersey 07102-5311
  Attorneys for Appellees, A. Fred Ruttenberg,
  Richard H. Stowe, John H. Underwood

NEAL R. MARDER, ESQUIRE (ARGUED)
GAIL J. STANDISH, ESQUIRE
PETER E. PERKOWSKI, ESQUIRE
Winston & Strawn
333 South Grand Avenue, 38th Floor
Los Angeles, California 90071

MARC J. GROSS, ESQUIRE
Greenbaum, Rowe, Smith & Davis
75 Livingston Avenue
Roseland, New Jersey 07068
        Attorneys for Appellee, Medquist Inc.

---

## OPINION OF THE COURT

---

SCIRICA, *Chief Judge*.

At issue in this shareholders' derivative action for breach of fiduciary duty is whether plaintiff properly pleaded demand futility under Fed. R. Civ. P. 23.1. The District Court dismissed under Fed. R. Civ. P. 12(b)(6). We will affirm.

### I.

Rhoda Kanter, a shareholder of MedQuist, Inc., a New Jersey corporation, brought a shareholders' derivative suit against MedQuist, ten individuals identified as members of

4

MedQuist's board of directors, and Koninklijke Philips Electronics N.V. (which owned 71 percent of MedQuist's unrestricted stock) for breach of fiduciary duty.[1]

MedQuist provides health information services and medical transcription services, such as the transcription of doctors' voice-recorded dictation of medical reports for inclusion in patient files. According to the complaint, MedQuist bills clients for transcription services on a cost per line basis. "Line" is defined as an "AAMT line," which contains 65 characters, including any letter, number, symbol or function key necessary for the final appearance, such as space bar, carriage return, underscore, bold, and any characters contained in the macro, header or footer.[2] To calculate the number of lines, the characters are totaled and divided by 65.

The complaint alleges MedQuist systematically inflated its character counts by counting a single character as multiple characters, which resulted in artificially high bills for

---

[1]The MedQuist directors named in the suit are: Hans M. Barella, Belinda W. Chew, William E. Curran, Stephen H. Rusckowski, A. Fred Ruttenberg, Esq., Richard A. Stowe, John H. Underwood, Scott M. Weisenhoff, Erik J. Westerink, and Jan H.M. Hommen.

[2]The AAMT line unit of measure is based on a standard measure initially developed by the American Association for Medical Transcription.

MedQuist's customers. In March 2004, MedQuist announced it would delay its annual filings with the Securities and Exchange Commission pending completion of an independent outside review of the company's billing practices. Kanter contends this review was undertaken in response to allegations by one of MedQuist's employees of improper billing practices. The key findings of the independent review were released in July 2004, allegedly revealing an unlawful billing scheme. MedQuist's board of directors responded to the findings by taking unspecified "disciplinary action" against five MedQuist employees. In October 2004, MedQuist issued a press release stating that its financial filings and statements for the two prior years should no longer be relied upon.[3] In November 2004, Kanter filed this shareholders' derivative suit alleging defendants violated their fiduciary duties to the company by (1) failing to adequately ensure accurate and lawful billing practices, (2) failing to prevent the artificial inflation of billing

---

[3]A release dated Nov. 2, 2004, posted on MedQuist's Web site notes that the board announced on Oct. 29, 2004 that the company's financial statements for 2002 and 2003 "and all earnings releases and similar communications relating to such periods, should no longer be relied upon." Press Release, MedQuist, MedQuist Board Issues Statement on 2002–2004 Financials (Nov. 2, 2004), *available at* http://www.corporate-ir.net/ireye/ir_site.zhtml?ticker=MEDQ &script=412&layout=-6&item_id=639255 (last visited May 24, 2007).

figures, and (3) failing to accurately report the company's true financial condition in its published financial statements. Kanter made no demand on the board of directors before filing suit.

All defendants filed Fed. R. Civ. P. 12(b)(6) motions to dismiss. In her brief opposing the motions to dismiss, Kanter requested leave to amend her complaint. Following oral argument, the District Court determined the proposed amendment would be futile, denied Kanter's motion, and granted defendants' motions to dismiss with prejudice. The District Court held Kanter had failed to make demand of the board of directors, and had failed to plead facts with sufficient particularity to merit excuse of the demand requirement of Fed. R. Civ. P. 23.1. After denial of Kanter's motion for reconsideration, this appeal followed.

On appeal, Kanter contends the District Court erred by applying improper legal standards in granting the motion to dismiss and denying her request to amend her complaint.

## II.

The District Court had jurisdiction over this case under 28 U.S.C. § 1332. We have appellate jurisdiction under 28 U.S.C. § 1291.

We review a district court's ruling on demand futility under Fed. R. Civ. P. 23.1 for abuse of discretion. *Garber v. Lego*, 11 F.3d 1197, 1200 (3d Cir. 1993); *Blasband v. Rales*, 971 F.2d 1034, 1040 (3d Cir. 1992). We review denial of leave to amend a complaint for abuse of discretion. *In re Burlington*

*Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997).

**III.**

The central issue in this appeal is whether Kanter should have been excused from the ordinary requirement that she make a demand on the board of directors before filing a shareholders' derivative action in the name of the corporation. We hold the District Court did not abuse its discretion in granting the motions to dismiss because Kanter's pleading lacked the factual particularity required to excuse demand. The Federal Rules of Civil Procedure provide that a complaint "shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends . . . (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks." Fed. R. Civ. P. 8(a).[4] Notice pleading requires a plaintiff to provide the opponent with fair notice of a claim and the grounds on which that claim is based.

But there are three notable exceptions to notice pleading that mandate a heightened standard requiring that facts be pleaded with particularity: (1) pleading fraud, Fed. R. Civ. P.

---

[4]The fundamental function of a federal pleading is "to inform the opposing party and the court of the nature of the claims and defenses being asserted by the pleader and, in the case of an affirmative pleading, the relief being demanded." 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1182 (3d ed. 2004).

9(b), the "who, what, when, where, and how" of the events at issue, *Burlington Coat Factory*, 114 F.3d at 1422 (citation omitted); (2) pleading scienter under the Private Securities Litigation Reform Act of 1985, 15 U.S.C. § 78j(b), foreclosing "boilerplate and conclusory allegations," *In re Rockefeller Ctr. Props., Inc. Secs. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002) (citation omitted); and (3) pleading demand futility in shareholder derivative suits under Fed. R. Civ. P. 23.1.[5] Rule 23.1 requires a plaintiff to plead with particularity either the efforts made to spur directors to take the action sought, and why these efforts were unsuccessful, or the reasons why no effort

---

[5]Under Fed. R. Civ. P. 23.1, a shareholder may file a derivative suit against the board of directors to claim enforcement of a right of the corporation where the corporation has failed to assert that right. Rule 23.1 contains specific requirements for plaintiffs' pleadings in derivative suits. First, the plaintiff must allege ownership of shares, or subsequent ownership by operation of law, at the time of the challenged transaction. Second, the plaintiff must plead that the federal courts have jurisdiction to hear the action. Third, and of particular relevance to this case, Rule 23.1 requires plaintiffs to "allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority . . ., and the reasons for the plaintiff's failure to obtain the action or for not making the effort." Fed. R. Civ. P. 23.1.

was made to demand action from the board. Where a plaintiff has made no demand on the board, a court may excuse the rule's requirement if it determines that demand would have been futile. But a plaintiff is obliged to plead, with particularity, facts that establish demand futility. Fed. R. Civ. P. 23.1.

The purpose of Rule 23.1's demand requirement is to "affor[d] the directors an opportunity to exercise their reasonable business judgment and waive a legal right vested in the corporation in the belief that its best interests will be promoted by not insisting on such right." *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 96 (1991) (internal quotation marks omitted). The Court has noted the "demand requirement" of Rule 23.1 relates to the "adequacy of the shareholder representative's pleadings," and does not itself necessarily require demand. *Id.* at 96. Furthermore, "the function of the demand doctrine in delimiting the respective powers of the individual shareholder and of the directors to control corporate litigation clearly is a matter of 'substance,' not 'procedure.'" *Id.* at 96–97. Thus, federal courts hearing shareholders' derivative actions involving state law claims apply the federal procedural requirement of particularized pleading, but apply state substantive law to determine whether the facts demonstrate demand would have been futile and can be excused. *Id.* at 98-99.

**IV.**

At issue is whether Kanter's pleading contained sufficiently particularized facts under New Jersey's substantive

10

standards for determining that demand of the MedQuist board would have been futile.

The New Jersey Supreme Court in *In re PSE&G Shareholder Litigation*, 801 A.2d 295 (N.J. 2002), set forth the standard for analyzing shareholders' derivative suits under its own procedural rule, New Jersey Rule of Court 4:32-3.[6] Drawing guidance from two Delaware cases,[7] *Aronson v. Lewis*, 473 A.2d 805 (Del. 1984) and *Brehm v. Eisner*, 746 A.2d 244 (Del. 2000), the New Jersey Supreme Court articulated New Jersey's two-pronged standard for shareholder plaintiffs to

---

[6]New Jersey Rule of Court 4:32-3, states in part:
> The complaint shall also set forth with particularity the efforts of the plaintiff to secure from the managing directors or trustees and, if necessary, from the shareholders such action as is desired, and the reasons for the failure to obtain such action or the reasons for not making such effort.

N.J. R. 4:32-3 (formerly designated as R. 4:32-5).

[7]The *PSE&G* court noted this issue was a matter of first impression, but focused its analysis on the decision of the Chancery Division of the New Jersey Superior Court in *In re Prudential Insurance Co. Derivative Litigation*, 659 A.2d 961 (N.J. Super. Court 1995). The *Prudential* court, in the absence of relevant New Jersey precedent, relied heavily on the decisional law of Delaware.

11

withstand a motion to dismiss for failure to make a demand. The Court stated:

> [T]hey must plead with particularity facts creating a reasonable doubt that: (1) the directors are disinterested and independent, or (2) the challenged transaction was otherwise the product of a valid exercise of business judgment.  If either prong is satisfied, demand will be excused under [Rule 4:32-3].

*PSE&G*, 801 A.2d at 310.  *See also*, *Aronson*, 473 A.2d at 814; *Brehm*, 746 A.2d at 256.

In an earlier case, the Chancery Division of the New Jersey Superior Court applied the *Aronson* two-prong approach in *In re Prudential Ins. Co. Derivative Litig.*, 659 A.2d 961 (N.J. Super. Court 1995).  The *Prudential* court found that the first prong was not satisfied in that case because plaintiffs had made "mere 'conclusory allegations'" about the directors lack of independence and disinterestedness.  *PSE&G*, 801 A.2d at 309 (quoting *Prudential*, 659 A.2d at 971).  The court noted the pleading did not differentiate among the directors and set forth no facts showing that defendants had actual knowledge of the alleged wrongdoing.  The court also rejected the suggestion that demand was futile because directors would have to sue themselves, calling this a "bootstrap argument" that, if accepted, would "weaken the managerial power of directors."  *Id*.

The *Prudential* court also found the second prong was

12

not satisfied because the allegations involved inaction by the board. This, the court reasoned, made it "impossible to perform the essential inquiry contemplated by *Aronson*, whether the directors have acted in conformity with the business judgment rule in approving the challenged transaction." *Id.* at 309 (quoting *Prudential,* 659 A.2d at 975) (internal quotation marks omitted); *Rales v. Blasband*, 634 A.2d 927, 933 (Del. 1993). Thus, when the complaint asserts inaction by the board, as here, courts will not excuse demand "in the absence of allegations demonstrating why the board is incapable of considering a demand."[8] *Prudential,* 659 A.2d at 975; *Rales*, 634 A.2d at 934.

In reviewing a grant of a motion to dismiss, federal courts "are required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." *Evancho*

---

[8]*Rales* offered this further guidance on determining demand futility:

> "[A] court must determine whether or not the particularized factual allegations of a derivative stockholder complaint create a reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand. If the derivative plaintiff satisfies this burden, then demand will be excused as futile.

*Rales v. Blasband*, 634 A.2d 927, 934 (Del. 1993).

*v. Fisher*, 423 F.3d 347, 350 (3d Cir. 2005). "However, a court need not credit either 'bald assertions' or 'legal conclusions' in a complaint when deciding a motion to dismiss." *Id.* at 351.[9] Kanter's pleadings fail to create reasonable doubt about the directors' independence and disinterestedness or their valid exercise of business judgment.

## A.

Because the New Jersey Supreme Court in PSE&G sought guidance from Delaware's decisional law, we will do the same here. To be independent, "'a director's decision is based on the corporate merits of the subject before the board rather than extraneous considerations or influences.'" *Rales*, 634 A.2d, at 936 (quoting *Aronson*, 473 A.2d at 816). Impartiality and objectivity are the primary concerns. "Directorial interest exists whenever divided loyalties are present, or where the director stands to receive a personal financial benefit from the transaction not equally shared by the shareholders." *Blasband v. Rales*, 971 F.2d 1034, 1048 (3d Cir. 1992) (citing *Aronson*, 473 A.2d at 812). A director who is beholden to an interested director or "so under [another's] influence that [his] discretion

---

[9]New Jersey's procedural standard similarly provides that "'[p]laintiffs are entitled to all reasonable factual inferences that logically flow from the particularized facts alleged, but conclusory allegations are not considered as expressly pleaded facts or factual inferences.'" *PSE&G*, 801 A.2d at 312 (quoting *Brehm*, 746 A.2d at 255); *accord, Prudential*, 659 A.2d at 971.

14

would be sterilized" would lack independence. *Rales*, 634 A.2d at 936.

Kanter contends Philips controlled the board because it owned 71 percent of MedQuist's common stock, a fact she says strengthens the inference that the directors nominated by Philips can exert considerable influence over other directors. She contends that seven directors were either current or former employees of Philips and so were not independent of Philips because they were beholden to it for continued employment, salary and benefits. Thus, she contends a majority of the board could not reasonably be expected to consider Kanter's demand impartially because a majority was controlled by Philips.[10]

[10]Kanter's complaint alleges the board of directors was composed of ten persons, six of whom were nominated by Philips. Defendants insist that the actual composition of the board was six persons, with three Philips-nominated directors and three independent directors. The other four persons sued by Kanter, defendants add, no longer served on the board of directors at the time the complaint was filed. On appeal, defendants maintain that Kanter conceded to the District Court she was aware of this prior to filing her complaint because she had reviewed the list of directors posted on MedQuist's Web site.

Trial transcripts recite that Kanter acknowledged she was aware of the discrepancy between the list of directors on file for 2003 with the SEC, and the list of directors MedQuist maintained on its Web site. Kanter told the District Court she

15

But ownership of a majority stake in MedQuist alone does not necessarily demonstrate a lack of ability to act with the company's best interests in mind. Conversely, that Philips owned such a significant stake in MedQuist may suggest that its interests were aligned with those of other stockholders or that it would benefit from the company's success. *McGowan v. Ferro*, 859 A.2d 1012, 1029 (Del. Ch. Ct. 2004); *see Kaster v. Modification Sys. Inc.*, 731 F.2d 1014, 1019 (2d Cir. 1984) (in derivative action, the bare fact of 71% ownership by an alleged wrongdoer was insufficient to excuse demand). The *Aronson* court noted that a director's nomination or election at the behest of a controlling shareholder is not enough to show a lack of independence because that "is the usual way a person becomes

---

named all ten persons as defendants out of an abundance of caution because she did not know which list was correct.

Here, she contends the actual board membership was a factual issue that should not have been decided on a motion to dismiss. But Kanter mischaracterizes the District Court opinion, which makes no factual determination about the board's size or composition, but rather found unavailing Kanter's assertion that board members could not be independent simply because Philips controlled 71 percent of MedQuist's common stock.

Kanter also contends MedQuist's failure to update its directorship list with the SEC supports an inference that the board consciously disregarded its responsibilities. But this alone cannot create reasonable doubt about the directors' independence or disinterestedness.

16

a corporate director." *Aronson*, 473 A.2d at 816. The focus should be on the director's "care, attention and sense of individual responsibility to the performance of one's duties, not the method of election, that generally touches on independence." *Id.*

Despite Kanter's assertions of misfeasance or non-feasance, the only board actions cited in her complaint—those detailing the board of directors' response when it was informed of the allegedly improper billing scheme—suggest that the board reacted appropriately. The board hired two outside firms—law firm Debevoise & Plimpton LLP and accounting firm PricewaterhouseCoopers, LLP—to conduct an independent investigation. Following results of this investigation, the board disciplined several employees; and it notified shareholders and the general public of inaccuracies in its financial reports for the relevant periods. The complaint fails to create a reasonable doubt that the MedQuist board lacked independence as a result of Philips' ownership of a majority stake in MedQuist.

Kanter also contends that defendant A. Fred Ruttenberg, a partner at the law firm Blank Rome Comisky & McCauley LLP[11] and an outside MedQuist director, was not independent because his firm had acted as outside counsel to MedQuist. She asserts Ruttenberg was beholden to Philips to maintain the business relationship between his firm and MedQuist.

The Court of Appeals for the Sixth Circuit found no

---

[11]The firm has since shortened its name to Blank Rome LLP.

automatic inference of bias or control on the part of a director who had himself given legal assistance to the company as outside counsel.[12] *In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1084 (6th Cir. 1984). We agree. Kanter has failed to create a reasonable doubt of Ruttenberg's independence on this ground.[13]

**B.**

---

[12]Other courts have noted that where a complaint fails to allege the amount of fees received by a director's law firm or fails to show that the director's compensation from the firm was tied to work he helped bring in from the company, it "fails to allege the materiality of these factors to [the director]." *Guttman v. Huang*, 823 A.2d 492, 503 (Del. Ch. 2003). The Delaware Chancery Court has also suggested that receipt of "substantial" fees by the law firm of a director could create reasonable doubt as to that director's independence, but that this inference was not automatic. *In re Ply Gem Indus., Inc., S'holders Litig.*, 2001 WL 755133 at *8–9 (Del. Ch. 2001) (where a partner at a small law firm brought nearly $1 million in revenues from a single client in one year to the firm, he "may be sufficiently beholden to, or at least significantly influenced by, that client as to affect the independence of his judgment").

[13]Kanter makes no specific claims at all about the other two outside directors, either about how they are controlled or how they acted inappropriately.

18

Kanter also fails to create a reasonable doubt as to the directors' disinterestedness. As noted, "[d]irectorial interest exists when divided loyalties are present, or where the director stands to receive a personal financial gain from the transaction not equally shared by the shareholders." *Prudential*, 659 A.2d at 971; *Aronson*, 473 A.2d at 812. "A director is not to be viewed as being 'interested' merely because he or she may have approved the challenged transaction or because a shareholder alleges that the directors would be reluctant to sue a fellow corporate decision-maker." *PSE&G*, 801 A.2d at 314; *Prudential*, 659 A.2d at 971. "A plaintiff may not bootstrap allegations of futility merely by alleging that the directors participated in the challenged transaction or that they would be reluctant to sue themselves." *Prudential*, 659 A.2d at 971.

As the District Court noted, the complaint does not place specific blame on any director, nor does it assert they had knowledge of the alleged billing practice or that they benefitted from the use of this practice. In *Prudential*, the court was faced with similarly unspecific pleadings about director interest. It wrote:

> The amended complaint does not single out, among current or past directors, which directors participated in the alleged wrongdoing, which directors "control" the board and which are, in turn, "controlled." No individual directors or group of directors are set apart; in fact, many allegations do not differentiate among the

19

> directors and the other defendants. Nor does the amended complaint plead any facts showing that past directors had actual knowledge of the alleged wrongdoings at the time they were committed.

*Id.*, at 971.

Here the complaint fails to allege specific actions by any of the defendants, nor does it assert knowledge of alleged wrongdoings. The District Court found these conclusory allegations insufficient to satisfy the heightened pleading requirements of Rule 23.1. We agree.

Kanter's pleadings are non-specific, and fail to differentiate between directors other than to assert all the Philips-nominated directors were controlled by Philips and that Ruttenberg was beholden to Philips for law firm business. With the exception of Ruttenberg, no specific director is alleged to have any interest in the alleged scheme that would differ from the shareholders'. And in Ruttenberg's case, as noted, that allegation is attenuated.

The bare allegation that a board is interested because its members would be reluctant to sue themselves has been considered and rejected. *See Prudential*, 659 A.2d at 972; *Aronson*, 473 A.2d at 816. Kanter has not pled sufficiently particularized facts to show director interest or lack of independence

## C.

20

Kanter has also failed to create a reasonable doubt that the board exercised valid business judgment in the challenged transaction, thus failing to satisfy the second prong of the analysis adopted by the New Jersey Supreme Court in *PSE&G*.

*Aronson* and *Prudential* noted the difficulty of overcoming the valid business judgment presumption in situations where the allegations involved inaction by a board. *Aronson*, 473 A.2d at 813; *Prudential*, 659 A.2d at 974–75. As noted, the *PSE&G* Court held that where inaction is the heart of the allegation, the plaintiff bears the burden of demonstrating a reasonable doubt as to the validity of the business judgment presumption.

Kanter challenges broad inaction by the board. The only actions pleaded—the actions taken by the board after learning of the alleged improper billing scheme—cut against her argument rather than bolster it. Her pleaded facts do not suggest incompetence or misfeasance that might call into question the board's business judgment.

The board's actions included an independent investigation by Debevoise & Plimpton and PricewaterhouseCoopers, a public statement that the company's financial filings and statements during the relevant period should not be relied on, and the discipline of several employees. These appear to be precisely the types of actions an independent board exercising valid business judgment should take when made aware of a serious problem. By themselves they do not create reasonable doubt as to the validity of its judgment.

21

Kanter does not plead facts showing that the board or Philips were involved in the scheme, that they conceived it or covered it up, or that they acted improperly once made aware of it.  The absence of such facts in her pleading—and the presence of facts that undercut her contention—defeats her argument that demand of the board would have been futile.  Kanter has failed to satisfy the second prong of the *PSE&G* test.

1.

The District Court also rejected Kanter's attempt to paint her claim as fitting under *In re Caremark International, Inc. Derivative Litigation*, 698 A.2d 959 (Del. Ch. 1996).  The District Court noted that Kanter's claims were "empty of the kind of fact pleading that is critical to a *Caremark* claim," which would have to show the directors were conscious of the fact they were  not doing their jobs.  *See Guttman v. Huang*, 823 A.2d 492 (Del. Ch. 2003).  Such pleading should have alleged the lack of an audit committee, or the existence of an audit committee whose work was patently inadequate or that functioned with clear notice of serious accounting irregularities, the District Court noted.

We agree.  Kanter has failed to plead there were any red flags that should have alerted the directors to the problems.  Rather, she pleaded the opposite, that MedQuist had a functioning audit committee that appears to have been functioning and meeting properly, and that the board's actions when it learned of the problem were responsive and appropriate.

22

## V.

Kanter also appeals the denial of her motion for leave to amend her complaint. Fed. R. Civ. P. 15(a) provides that leave to amend a complaint shall be freely given when justice so requires. Generally, a plaintiff will be given the opportunity to amend her complaint when there is an asserted defense of failure to state a claim. *Shane v. Fauver*, 213 F.3d 113 (3d. Cir. 2000); 6 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1473 (2d ed. 1990). We review for abuse of discretion, and there is none where pleading deficiencies would not have been remedied by proposed amendments. *In re Adams Golf, Inc. Sec. Litig.*, 381 F.3d 267, 280 (3d. Cir 2004). Where an amended pleading would be futile, that alone is sufficient ground to deny leave to amend. *See Burlington Coat Factory*, 114 F.3d at 1434–35; *Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000).

After oral argument, the District Court denied Kanter's motion for leave to amend. A review of the transcript demonstrates that Kanter offered no new facts demonstrating demand futility.[14]

---

[14]The only new facts offered were that three class action lawsuits had been filed against MedQuist, suits which Kanter posited would help her plead with greater specificity. However, these complaints had been filed some months prior to Kanter's original complaint, and Kanter failed to identify what facts, if any, from those cases would help her case.

The District Court did not abuse its discretion in denying leave to amend the complaint.[15]

## VI.

For these reasons, we will affirm the judgment of the District Court.

---

[15]Kanter also contends the District Court should have applied a reasonable doubt standard in its analysis of whether MedQuist's exculpatory provision shielded the directors.

New Jersey allows a corporation to include an exculpatory provision for its directors and officers in its charter. Such provisions, however, cannot exculpate directors and officers from "any breach of duty based upon an act or omission (a) in breach of such person's duty of loyalty to the corporation or its shareholders, (b) not in good faith or involving a violation of law or (c) resulting in receipt by such person of an improper personal benefit." N.J. Stat. Ann. § 14A:2-7 (West 2006).

The District Court here applied the standard that where the charter provision is consistent with the state statute, the provision provides significant protection for directors, and the plaintiff must show a "substantial likelihood" of success in proving that one of the three exceptions to the exculpatory provision was met. *Guttman*, 823 A.2d at 501.

Whether the standard is "reasonable doubt" or "substantial likelihood," Kanter's pleading fails under either test.

24