NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-3293
_____

JEFFREY KAUFMAN,
Appellant

v.

BARBARA T. ALEXANDER; STEPHEN M. BENNETT; DONALD G.
CRUICKSHANK; RAYMOND V. DITTAMORE; THOMAS W. HORTON; IRWIN M.
JACOBS; PAUL E. JACOBS; ROBERT E. KAHN; SHERRY LANSING; DUANE
NELLES; FRANCISCO ROS; BRENT SCOWCROFT; MARC I. STERN; WILLIAM
E. KEITEL; STEVEN R. ALTMAN; STEVEN M. MOLLENKOPF; DONALD J.
ROSENBERG; QUALCOMM INCORPORATED
_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE
(1-11-cv-00217)
District Judge: Honorable Richard G. Andrews
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
March 26, 2015
_____

Before: GREENAWAY, JR., KRAUSE, GREENBERG, *Circuit Judges*.

(Filed: August 28, 2015)
_____

OPINION*
_____

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

GREENAWAY, JR.; *Circuit Judge*.

Appellant Jeffrey Kaufman, a QualComm, Inc. shareholder, asserts that QualComm's Board Members made material misstatements in two proxy statements and breached their fiduciary duties and various corporate contracts. Five of the Claims on appeal are derivative. On those claims, the District Court appropriately granted summary judgment to the QualComm Board Members ("Individual Directors") because demand was not made and was not excused. As to the two direct Claims, there are no genuine disputes of material fact regarding whether the Individual Directors had the authority to submit for shareholder approval amendments to the relevant compensation plan. We will affirm.

## I.    FACTUAL AND PROCEDURAL HISTORY

QualComm, Inc. is a Delaware Corporation. On December 5, 2005, QualComm's Board passed a formal resolution approving the 2006 Long-Term Incentive Plan ("LTIP").[1] Shareholders approved the plan at the 2006 Annual Meeting. In both 2010 and 2011, the Compensation Committee[2] approved amendments to the LTIP, which

---

[1]     The 2006 LTIP was "a restatement of the Company's 2001 Stock Option Plan." J.A. 463 ¶ 1.1. Section 2 of the LTIP provides that the Compensation Committee "shall have the exclusive authority to administer the Plan and shall have all of the powers granted herein, including, without limitation, the power to amend or terminate the Plan at any time, subject to the terms of the Plan and any applicable limitations imposed by law." J.A. 464 ¶ 2(g).

[2]     "The Compensation Committee . . . was established by the Board of Directors . . . of [QualComm, Inc.] . . . to assist the Board in fulfilling its responsibilities for the compensation of the Company's executive officers and non-employee directors." J.A.

sought increases to the share reserve. Per Section 16 of the LTIP, "[t]he Board or the Committee may amend, suspend or terminate the Plan at any time. However, without the approval of the Company's stockholders, there shall be [] no increase in the maximum aggregate number of shares of Stock that may be issued under the Plan . . . ." J.A. 483. The amendments were submitted for shareholder approval in the 2010 and 2011 Proxy Statements respectively and the shareholders approved both amendments.

On March 11, 2011, plaintiff Kenneth Hoch filed the original complaint against the Individual Directors and QualComm, Inc. (collectively "Appellees"),[3] which alleged that certain statements in the 2011 Proxy violated specified Treasury regulations precluding QualComm, Inc. from receiving tax deductions under 26 U.S.C. § 162(m). After the District Court granted in part a motion to dismiss, in the first of many iterations of the allegations, Hoch filed an amended complaint, which included four direct claims and six derivative claims. On July 2, 2013, the District Court granted in part a second motion to dismiss, which left unresolved Claims II, III, VIII, IX, X, XI, XII, and XIII. On July 12, 2013, Hoch and Appellant Kaufman filed the second amended verified complaint, which left the claims unchanged but substituted the plaintiff from Hoch to Kaufman. *Kaufman v. Alexander*, 62 F. Supp. 3d 395, 397 n.2 (D. Del. 2014). The Individual Directors moved for summary judgment. Appellant cross-moved for partial

532. The Compensation Committee Charter stipulates that the Committee "shall consist of three or more non-employee directors." *Id.*

[3] The Individual Defendants were QualComm Executive Officers and members of QualComm's Board of Directors at the time the 2010 and 2011 proxy statements were issued.

3

summary judgment. On June 11, 2014, the District Court granted the Individual

Directors' motion for summary judgment. On that same day, but in a separate

Memorandum Order, the District Court granted QualComm, Inc.'s motion for summary

judgment. Kaufman timely appealed the District Court's grant of summary judgment as

to all Appellees.

## II.     LEGAL STANDARDS

The District Court had jurisdiction pursuant to 28 U.S.C. § 1332. We have

jurisdiction pursuant to 28 U.S.C. § 1291. "We review a district court's grant of

summary judgment *de novo*, applying the same standard the district court applied." *In re*

*G-I Holdings, Inc.*, 755 F.3d 195, 201 (3d Cir. 2014) (internal quotation marks and

citation omitted). "'We also review the legal interpretation of contractual language *de*

*novo*.'" *Id.* (quoting *Viera v. Life Ins. Co. of N. Am.*, 642 F.3d 407, 413 (3d Cir. 2011)).

We may affirm on any ground supported by the record. *Hildebrand v. Allegheny Cnty.*,

757 F.3d 99, 104 (3d Cir. 2014).

The only claims remaining in the instant appeal are Claims II, III, VIII, IX, XI,

XII, and XIII. Delaware law applies to Claims VIII and XI; Delaware law also provides

the substantive requirements for the issue of demand futility, which implicates Claims II,

III,[4] IX, XII, and XIII.[5]

---

[4]     Claims II and III are derivative claims against the Individual Directors alleging that they distributed false and misleading information in a proxy statement and breached their fiduciary duties.

4

## III.  DISCUSSION

### A.  Demand Futility[6]

Federal Rule of Civil Procedure 23.1(b)(3) requires a shareholder filing a derivative suit to make a particularized pleading of "(A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and (B) the reasons for not obtaining the action or not making the effort."  This demand requirement "afford[s] the directors an opportunity to exercise their reasonable business judgment and waive a legal right vested in the corporation in the belief that its best interests will be promoted by not insisting on such right."  *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 96 (1991) (internal quotation marks omitted).  "[F]ederal courts hearing shareholders' derivative actions involving state law claims apply the federal procedural requirement of particularized pleading, but apply state substantive law to determine whether the facts demonstrate [that] demand

---

[5]     Claims IX, XII, and XIII are derivative claims against the Individual Directors alleging that they "[a]bdicat[ed] directors' duties," violated the terms of the shareholder-approved plans, and were unjustly enriched.  J.A. 115–17.

[6]     The parties dispute the applicable standard of review of the District Court's summary judgment determination that pre-suit demand was not excused.  It is undisputed that demand determinations made on a motion to dismiss are reviewed for abuse of discretion."  *Fagin v. Gilmartin*, 432 F.3d 276, 281 (3d Cir. 2005) (noting that we "normally . . . review the [d]istrict [c]ourt's determination of demand futility for abuse of discretion" but applying plenary review because "the legal precepts used . . . in making that determination have been challenged").  While we see no logical reason to apply a more searching review of a district court's demand determination post-summary judgment than we apply post-motion to dismiss, we need not resolve this issue today because demand was not excused under either standard of review.

would have been futile and can be excused." *Kanter v. Barella*, 489 F.3d 170, 176 (3d Cir. 2007).

### 1.    Demand Was Not Excused[7]

Under Delaware law, to determine whether demand is excused, a court considers "whether, under the particularized facts alleged, a reasonable doubt is created that the directors are disinterested and independent" or "whether the pleading creates a reasonable doubt that the challenged transaction was otherwise the product of a valid exercise of business judgment."[8] *Brehm v. Eisner,* 746 A.2d 244, 256 (Del. 2000) (internal quotation marks omitted).

Appellant argues that the Individual Directors "were interested in maintaining the results of the 2010 and 2011 shareholder votes because the majority of their

---

[7]    The District Court initially determined, at the motion to dismiss stage, that Appellant "ha[d] properly pled that demand [wa]s excused," noting that "it [wa]s a close question" so it "[could] not conclude at th[at] stage of the proceedings that [the] Complaint fail[ed] to state a claim." *Hoch v. Alexander*, No. 11-217, 2011 U.S. Dist. LEXIS 71716, at *15 (D. Del. July 1, 2011). Appellant argues that this became the "law of the case" and therefore it was inappropriate for the District Court to revisit the issue at summary judgment and conclude that demand was not excused. Appellant's Br. at 36. The District Court's ruling on a motion to dismiss, however, could hardly foreclose a subsequent ruling on summary judgment where a different standard applies. In any event, we need not assess the merits of this argument, because the "law of the case [doctrine] cannot insulate an issue from appellate review." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988). As discussed below, after reviewing the issue de novo, we have determined that demand was not excused.

[8]    Appellant does not argue that the transactions here involved self-dealing or other behavior at odds with the exercise of valid business judgment. As such, our analysis is limited to the first prong.

6

compensation in those years was awarded based on these votes."[9]  Appellant's Br. at 39

(emphasis omitted).  While the amendments to the LTIP did increase the number of

shares available to be utilized for compensation payments, the amendments did not alter

the amount of compensation to which each Director was entitled.  As noted by Appellees,

there is no evidence that, had the LTIP amendments not been passed by shareholders,

QualComm, Inc. would not have used an alternative compensation form to provide its

Directors the compensation to which they were contractually entitled.  A district court in

Delaware recently rejected a similar argument made by Appellant in a different case.  *See*

*Kaufman v. Allemang*, 70 F. Supp. 3d 682, 692 (D. Del. 2014) ("The fact that each

director is eligible to participate in the 2012 plan is insufficient, in and of itself, to

establish that every director is interested in the disputed transaction [because] . . . had the

2012 plan not been approved, the 2003 directors' plan would have remained in place and

compensation continued under such plan.").

Nor was the Board "interested" with regard to the actions of the Compensation

Committee generally.  To establish demand futility, plaintiff must establish that a

*majority* of the board is interested.  *Levine v. Smith*, 591 A.2d 194, 205–06 (Del. 1991)

("The premise of a shareholder claim of futility of demand is that a majority of the board

of directors either has a financial interest in the challenged transaction or lacks

independence. . . .").  The District Court was correct that "the presence of three of the

---

[9]    Appellant's convoluted "burden-shifting" argument is of no moment.  Our inquiry concerns whether a genuine dispute of material fact exists regarding the Individual Directors' interest in the relevant transaction.

eight board members on the compensation committee [did not] excuse demand."[10]

*Kaufman*, 62 F. Supp. 3d at 403. For the foregoing reasons, demand was not excused, which is dispositive as to Claims II, III, IX, XII, and XIII.[11]

**B.    Claim VIII**

Throughout the course of this litigation Appellant has changed the articulation of Claim VIII. In his complaint, Claim VIII concerned the Directors' alleged abdication of their duties under the corporate documents and sought injunctive relief "in the form of a meeting of the board to consider and vote upon amending the 2006 LTIP and recommending it to the stockholders for a new vote." J.A. 114. The District Court analyzed the claim as one alleging that the Individual Directors utilized the incorrect procedure for slating the LTIP amendments for shareholder vote. *Kaufman*, 62 F. Supp. 3d at 403 ("Claim VIII is a direct claim based upon the Plaintiff's theory that the Defendants failed to properly approve the 2006 LTIP . . . for a shareholder vote. . . ." (internal quotation marks omitted)).

On appeal, Appellant appears to present Claim VIII as a breach of contract claim, conflating it with Claim XI. *See* Appellant's Br. at 20, 25–26 (arguing that "Claims VIII and XI allege similar violations of the Bylaws, Compensation Committee Charter and 2006 LTIP as direct claims because Plaintiff has suffered harm in the violation of a

---

[10]    Based on the Board minutes, it appears that at all relevant times there were twelve Members of the Board. The Compensation Committee never had more than three members.

[11]    Though the District Court resolved Claims II and III on other grounds, expressly avoiding a determination of demand excuse as to these claims, we can affirm on any ground supported by the record. *Hildebrand*, 757 F.3d at 104.

contract right, and a wrong involving a contractual right of a shareholder. . . ." (internal quotation marks omitted)). Appellee correctly notes that this is the first time Appellant has made this argument as to Claim VIII, a fact that explains why the District Court did not analyze Claim VIII in tandem with Claim XI. "Absent exceptional circumstances, this Court will not consider issues raised for the first time on appeal." *Del. Nation v. Pennsylvania*, 446 F.3d 410, 416 (3d Cir. 2006) (citation omitted). As such, we need not engage in a breach of contract analysis as to Claim VIII. That being said, the analysis, *infra*, regarding Claim XI applies equally to Claim VIII.

Assuming, arguendo, that this claim is direct rather than derivative,[12] we agree with the District Court that the "Compensation Committee had been expressly provided authority to effectuate amendments to the LTIP and thus had implied authority to submit these amendments for a shareholder vote." *Kaufman*, 62 F. Supp. 3d at 405. At bottom, Appellant's argument is that the Compensation Committee did not have authority to submit the LTIP amendments to the shareholders for a vote. The Board delegated broad powers to the Compensation Committee including the "responsib[ility] for the design, implementation and administration of all Company-wide benefit plans, including equity-based compensation programs," J.A. 529, and "other powers as it shall deem necessary to the efficient discharge," *id.* at 530, of its responsibilities including "the exclusive

---

[12]    If Claim VIII is understood as a contract claim, it is direct. If it is understood as a breach of fiduciary duty claim, whether it is direct or derivative depends on whether Appellant's success on the claim requires a showing that there was harm to QualComm, Inc. Because the Board did not, in fact, fail to follow the procedures set forth in the relevant corporate documents, we need not determine whether Claim VIII is direct or derivative.

9

authority to administer the [LTIP] . . . and the power to amend or terminate the [LTIP] at any time," *id.* at 464.

While section 16 of the LTIP requires that increases in share allotment be approved by shareholders, nothing in the corporate documents explicitly requires the full Board to slate those shareholder votes. The Bylaws state that matters may be submitted to the shareholders "by or at the direction of the Board of Directors." J.A. 839 (§ 5(b)(A)). In light of the broad powers delegated to the Compensation Committee, it was acting "at the direction" of the Board when it slated the LTIP amendments for shareholder vote. *Id*. at 839.

The Committee's implied authority to slate the amendments for shareholder vote is also supported by the fact that the Committee was responsible for amending the LTIP, but, in order to effectuate share increases, shareholder approval was required. Therefore, the LTIP granted the Committee "such other powers as it shall deem necessary to the efficient discharge" of its responsibilities, J.A. 530, which includes the implied authority to seek shareholder approval of amendments to the LTIP.

Nor does our reading of the Bylaws as authorizing the Compensation Committee to slate shareholder votes "at the direction of the Board of Directors" render superfluous the Charter provision granting the Committee the authority to "[r]eview provisions of all compensation and benefit plans requiring approval by Company stockholders, including new plans and amendments to continuing plans, and make appropriate recommendations to the Board regarding such approval." J.A. 530. Rather, the broad delegation of power by the Board of Directors, the Bylaws, and the Charter authorizes the Committee to slate

10

a shareholder vote regarding any new plans or amendments where necessary to implement the LTIP and, at the same time, authorizes the Committee to make recommendations to the Board regarding the adoption of any proposed plans or amendments. Our conclusion is buttressed by other statements in the Charter including that the Committee is "responsible for the design, implementation and administration of all Company-wide benefit plans," *id.* at 529 ¶ 1, and that the Committee has the power to "[p]erform such other functions and have such other powers as it shall deem necessary to the efficient discharge" of the LTIP, *id.* at 530 ¶ 6.

Finally, the very act of including the proposed LTIP amendments in the draft proxy statements served as a "recommendation" of the amendments to the Board. The record reflects that the Board had an opportunity to review and comment on the draft proxy statements before they were submitted for shareholder vote.

### C. Claim XI

Claim XI is a direct claim alleging "violations of the Bylaws, Compensation Committee Charter and 2006 LTIP." Appellant's Br. at 25–26. Under Delaware law, "[d]irectors of a corporation . . . are not parties to a contract simply because the corporation is a party to the contract." *Ruggiero v. FuturaGene, plc.*, 948 A.2d 1124, 1132 (Del. Ch. 2008). "Delaware law clearly holds that officers of a corporation are not liable on corporate contracts as long as they do not purport to bind themselves individually."[13] *Id.* (internal quotation marks and citation omitted).

---

[13] The cases cited by Appellant are unavailing. In *Sanders v. Wang*, No. 16640, 1999 Del. Ch. LEXIS 203, at *21 (Del. Ch. Nov. 8, 1999) the Delaware Chancery Court

As the District Court correctly stated, Appellant did not plead, and there is no evidence demonstrating, that the Individual Directors purported to bind themselves individually with regard to the LTIP. Because of this, summary judgment was correctly granted to the Individual Directors and QualComm, Inc. as to this claim.

### D.     Appellee QualComm, Inc.

Claims VIII and XI are the only claims implicating Appellant QualComm, Inc. These claims are premised on the assumption that the Individual Directors violated § 16 of the LTIP. Because, as discussed above, the LTIP amendments were properly approved by both the Committee and the shareholders, summary judgment was correctly granted to QualComm, Inc. on these claims.

## IV.     CONCLUSION

For the foregoing reasons, we will affirm the District Court.

---

merely held that "the Plan" at issue was a contract between the shareholders and the defendant board. It made no pronouncement as to corporate contracts generally. Both *Ryan v. Gifford*, 918 A.2d 341 (Del. Ch. 2007) and *Halpert v. Zhang*, 966 F. Supp. 2d 406 (Del. Ch. 2013) involved only breach of fiduciary duties claims, not breach of contract claims.