NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 15-1516
_____

MARYLYNN HARTSEL;
DEANNA PARKER, derivatively on behalf of
Nominal Defendants, Vanguard International
Equity Index Funds d/b/a Vanguard European
Stock Index Fund, and Vanguard Horizon Funds
d/b/a Vanguard Global Equity Fund,

Appellants

v.

VANGUARD GROUP INC.; JOHN J. BRENNAN;
CHARLES D. ELLIS; RAJIV L. GUPTA; AMY GUTMANN;
JOANN HEFFERNAN HEISEN; ANDREW F. PEROLD;
ALFRED M. RANKIN, JR.; J. LAWRENCE WILSON;
ACADIAN ASSET MANAGEMENT LLC;  MARATHON ASSET
MANAGEMENT LLP; VANGUARD INTERNATIONAL
EQUITY INDEX FUNDS d/b/a Vanguard European Stock
Index Fund; VANGUARD HORIZON FUND
d/b/a Vanguard Global Equity Fund

_____

On Appeal from the United States District Court
for the District of Delaware
(Civ. No. 1-13-cv-01128)

District Judge: Sue L. Robinson

Submitted Under Third Circuit LAR 34.1(a)
December 10, 2015

BEFORE: FUENTES, CHAGARES, and GREENBERG *Circuit Judges*

(Filed: May 4, 2016)

_____

OPINION[*]

_____

Fuentes, *Circuit Judge*:

Plaintiffs, Maryanne Hartsel and Deanna Parker, brought this derivative action against several individuals, investment advisors, and investment funds.[1] They allege that certain mutual funds in which they owned shares suffered millions of dollars in losses as a result of Defendants' investment in illegal online gambling operations. The District Court dismissed Plaintiffs' claims for negligence, breach of fiduciary duty, breach of contract, and corporate waste. For the reasons that follow, we will affirm.

## I.    BACKGROUND AND PROCEDURAL HISTORY[2]

Some people gamble in casinos, while others place their bets on the stock exchange. The issues involved in this case arose out of both worlds. Section 1955 of the Illegal Gambling Business Act, makes it unlawful to own "all or part of an illegal

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] The individual Defendants are John J. Brennan ("Brennan"), Charles D. Ellis ("Ellis"), Rajiv L. Gupta, Amy Gutmann, JoAnn Heffernan Heisen, Andre F. Perold, Alfred M. Rankin, Jr., and J. Lawrence Wilson ("Wilson"), as well as Acadian Asset Management, LLC ("Acadian"), Marathon Asset Management, LLP ("Marathon") and The Vanguard Group, Inc. ("Vanguard"). The Nominal Defendants are Vanguard International Equity Index Funds d/b/a Vanguard European Stock Index Fund, and Vanguard Horizon Funds d/b/a Vanguard Global Equity Fund.

[2] The District Court had subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1332. We have jurisdiction under 28 U.S.C. § 1291.

2

gambling business."[3]  In 2006, the U.S. Department of Justice and various state law enforcement officials initiated a crackdown, which led to the arrests and prosecutions of various individuals that owned and operated the illegal gambling operations.  Many of the illegal operations were located offshore and issued public shares on foreign stock exchanges.  Prior to the crackdown, Plaintiffs claim that Defendants, investment advisers and former Trustees of the mutual funds (the "Funds"), bought, on behalf of the Funds, shares in the illegal offshore gambling companies.[4]   Plaintiffs contend that these investments violated Section 1955 and constituted a breach of fiduciary duty.[5]

After the crackdown, share values in gambling operations plummeted.  Plaintiffs allege that Defendants, despite knowing of the crackdown, increased the Funds' ownership of the illegal gambling businesses at that time.  As a result, they allege that the Funds suffered millions of dollars in losses.

---

[3] 18 U.S.C. § 1955.

[4] The operations were Sportingbet PLC, Partygaming Plc, bwin Interactive Entertainment AG, and NETeller Plc.

[5] Prior to the crackdown, in 2003 the U.S. Department of Justice issued a warning to the public that "[i]nternet gambling and offshore sportsbook operations that accept bets from customers in the United States violate Sections 1084, 1952, and 1955 of [Title] 18 of the United States Code, each of which is a Class E felony.  [A]ny person or entity who aids or abets in the commission of any of the above-listed offenses is punishable as a principal violator."  (App. at A-48, ¶ 73.)  Moreover, 18 U.S.C. § 1955 (b)(1)(ii) defines, the term "illegal gambling business" as involving "five or more persons who conduct, finance, manage, supervise, direct, or own all or part of such business."  Thus, as the District Court correctly interpreted the Amended Complaint, Plaintiffs allege that Defendants, by virtue of the investments, caused the Funds to become "part owners" in the illegal gambling businesses in violation of Section 1955.

Plaintiffs originally sought to recover their losses by filing a complaint in U.S. District for the Southern District of New York in 2008, alleging that Defendants' conduct violated the Racketeer Influenced and Corrupt Organizations Act, RICO, 18 U.S.C. § 1961-68.[6] The complaint also included common law claims for breach of fiduciary duty, negligence, and waste.[7] Judge Denise Cote dismissed the complaint with prejudice for lack of RICO causation and declined to exercise supplemental jurisdiction over the state law claims. The Second Circuit affirmed, and the Supreme Court denied certiorari.[8]

Plaintiffs then brought another action in the Delaware Court of Chancery in *Hartsel v. The Vanguard Group, Inc.,* 2011 WL 2421003 (Del. Ch. June 15, 2011) (hereafter referred to as "*Hartsel* I"), alleging both derivative and direct claims based on the same alleged illegal conduct. Plaintiffs did not make a demand on the Fund's Board of Trustees and instead argued demand futility. The Chancery Court dismissed the complaint for failure to make a timely demand on the Board and failure to allege cognizable claims.[9]

Plaintiffs thereafter made a demand on the Board before the expiration of the one-year period provided under the Delaware Savings Statute (the "Savings Statute"), which,

---

[6] *McBrearty v. The Vanguard Group, Inc.,* 2009 WL 875220, at *1 (S.D.N.Y. Apr. 2, 2009).

[7] *Id*. at *4.

[8] *McBrearty v. The Vanguard Group, Inc.,* 353 F. App'x. 640, 642 (2d Cir. 2009); *McBrearty v. The Vanguard Group, Inc.,* 560 U.S. 979 (2010).

[9] *Hartsel v. The Vanguard Group, Inc.,* 2011 WL 2421003, *23, *26-27 (Del. Ch. June 15, 2011).

4

in certain circumstances, tolls the statute of limitations for claims that are dismissed on purely procedural or technical grounds.[10] The Board thereafter formed a Special Litigation Committee ("SLC") but did not respond to the demand for over a year. In the interim, seeking to preserve their claims as timely under the Savings Statute, Plaintiffs sued again, this time in U.S. District Court for the District of Delaware, asserting claims of negligence, waste, breach of contract, and breach of fiduciary duty. After amending the Complaint, Plaintiffs also alleged that the Board and SLC purposefully postponed a decision with the intent of allowing the statute of limitations to expire. Shortly after Plaintiffs filed the Amended Complaint, the SLC recommended that the Board reject Plaintiffs' demand, and the Board accepted that recommendation.

Defendants moved to dismiss the Amended Complaint under Fed. R. Civ. P. 12(b)(6), arguing that Plaintiffs claims were time-barred. In opposition, Plaintiffs argued that, even though the three year statute of limitations governing their claims had run, the claims were preserved under the Savings Statute. To support this claim, Plaintiffs argued that the dismissal in the Chancery Court in *Hartsel* I for failure to make a demand on the board was entirely a "matter of form." The District Court granted Defendants' motion to

---

[10] All of Plaintiffs' claims are governed by a three year statute of limitations under Delaware law. *See* 10 Del. C. §§ 8112 and 8106. The Delaware Savings Statute ("Savings Statute"), 10 Del. C. § 8118(a), "provides exceptions to the applicable statute of limitations in certain instances where the plaintiff has filed a timely lawsuit, but is procedurally barred from obtaining a resolution on the merits." *Reid v. Spazio*, 970 A.2d 176, 180 (Del. 2009).

5

dismiss, concluding that the Savings Statute did not apply to preserve Plaintiffs' claims and that they were therefore time-barred.[11]   This appeal followed.

## II.   DISCUSSION

First, Plaintiffs contend that the District court erred by finding that their claims were time-barred.[12]  As the District Court observed, where a timely action is dismissed on certain technical grounds after the statute of limitations has run, the Savings Statute grants the plaintiff one year beyond final dismissal to refile the action.[13]   Here, in concluding that Plaintiffs' previous claims were dismissed on the merits, the District Court correctly noted that, "the entire question of demand futility is inextricably bound to issues of business judgment and the standard of that doctrine's applicability."[14] Moreover, we have stated that "federal courts hearing shareholders' derivative actions involving state law claims apply the federal procedural requirement of particularized pleading, but apply state substantive law to determine whether the facts demonstrate [that] demand would have been futile and can be excused."[15]   In consequence, we conclude that Plaintiffs cannot now characterize their failure to plead adequately demand

---

[11] Plaintiffs filed the present action almost two years after the statute of limitations governing their claims expired.

[12] We apply *de novo* review to a district court's dismissal of a complaint under Rule 12(b)(6).  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 230 (3d Cir. 2008).

[13] 10 Del. C. § 8118(a).

[14] *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000).

[15] *Kanter v. Barella*, 489 F.3d 170, 176 (3d Cir. 2007).

6

futility as "a matter of form" or mere technicality because their actions involved a question of pure legal strategy.[16] The District Court therefore properly determined that the claims were time-barred.

In dismissing the Amended Complaint, the District Court also addressed the Board's decision to reject the demand under Delaware's business judgment rule and concluded that the Board's conduct was not inconsistent with the rule. The court found that the Board had not abdicated its authority by failing to render a decision or enter into a tolling agreement. The court also held that the mere passage of time, without any allegation of bad faith, is insufficient indicia of wrongful refusal. Finally, the court rejected Plaintiffs' argument that demand was wrongfully refused because the Board denied Plaintiffs' request to participate in the investigation.

In Delaware, the business judgment rule is a presumption that directors act in good faith, on an informed basis, honestly believing that their action is in the best interests of the company.[17] Contrary to Plaintiffs' contention here that the Board abdicated its authority to decide Plaintiffs' demand, the District Court properly concluded that

---

[16] At least one Delaware Superior Court has stated that "avoiding or defeating" the action for a "matter of form" is "directed toward instances such as lack of jurisdiction or filing in the wrong venue." *O'Donnell v. Nixon Unif. Serv., Inc.*, No. CIV.A. 01C-10-291RRC, 2003 WL 21203291, at *5 (Del. Super. Ct. May 20, 2003), *aff'd sub nom.*, *O'Donnell v. Lilly*, 836 A.2d 514 (Del. 2003). This decision further supports the District Court's proper determination that the Savings Statute does not apply to save claims where, as here, plaintiffs have made a strategic legal decision to forgo making a demand on the Board.

[17] *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000).

Plaintiffs failed to allege that the investigation into their claims was unreasonable or that the Board's refusal was made in bad faith. Moreover, we agree with the District Court's determination that the Board "was not required to continuously inform plaintiff of developments in the investigation" and was entitled to reserve final decision-making authority.[18] In short, Plaintiffs failed to show that the investigation was unreasonable or that the Board's conduct was otherwise inconsistent with the business judgment rule.

Finally, Plaintiffs argue that the Board had an irreconcilable conflict of interest because the Board of the Funds was identical to that of Vanguard, the Funds' investment advisor. Plaintiffs therefore claim that the Board members were unable to independently evaluate Plaintiffs' demand. The District Court held that this argument was a mere reiteration of the "conflict of interest" argument that Plaintiffs asserted in *Hartsel* I to the Delaware Chancery Court, which it rejected. The District Court thus declined to revisit the issue. We agree with the District Court and conclude that Plaintiffs were collaterally estopped from raising the conflict of interest argument.[19] Moreover, the District Court

---

[18] *Gamoran v. Neuberger Berman, LLC*, No. 11 CIV. 07957 TPG, 2013 WL 1286133, at *5 (S.D.N.Y. Mar. 29, 2013), *aff'd in part*, *vacated in part*, 536 F. App'x 155 (2d Cir. 2013).

[19] Under the doctrine of collateral estoppel, "where a question of fact essential to the judgment is litigated and determined by a valid and final judgment, the determination is conclusive between the same parties in a subsequent case on a different cause of action. In such situation, a party is estopped from relitigating the issue again in the subsequent case." *Columbia Cas. Co. v. Playtex FP, Inc.,* 584 A.2d 1214, 1216 (Del. 1991) (citation omitted). Here, Plaintiffs asserted the same "conflict of interest" argument in *Hartsel* I, the same parties were involved in both cases, and the Chancery Court entered final judgment. And, while the District Court did not engage in a collateral estoppel analysis, we may affirm on any basis supported by the record. *See Fairview Twp. v. EPA*, 773 F.2d 517, 525 n.15 (3d Cir. 1985). Here, the record supports our conclusion.

8

properly concluded that Plaintiffs have offered no facts that members of the Board were interested or that the Board otherwise failed to carry out its fiduciary duties.

**III.    CONCLUSION**

For substantially the same reasons set forth in the District Court's thorough and persuasive opinion, we affirm the judgment of the District Court.